Linda **CLEVELAND–PERDUE, Successor Representative and Administratrix of the Estate of Joseph Jones, Jr. (a/k/a Roscoe Simmons), Plaintiff–Appellee,**

v.

**Robert L. BRUTSCHE, M.D., Defendant–Appellant.**

No. 88–2513.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1989.

Decided Aug. 4, 1989.

G. Flint Taylor, Chicago, Ill., Michael A. Bergin, Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., Michael E. Deutsch, Chicago, Ill., Gerald H. McGlone, Brad Bough, McGlone & Bough, Terre Haute, Ind., Jessie A. Cook, Trueblood, Harmon, Carter & Cook, Terre Haute, Ind., for plaintiff-appellee.

Ronald E. Elberger, Bose, McKinney & Evans, Indianapolis, Ind., for defendants-appellants.

Before CUMMINGS, CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This difficult case, which involves the issue of a federal prison official's immunity from a suit alleging deliberate indifference to a prisoner's medical needs, comes before us for the third time. *See Green v. Carlson*, 581 F.2d 669 (7th Cir.1978), *aff'd Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Green v. Carlson*, 826 F.2d 647 (7th Cir.1987). Defendant Robert Brutsche appeals from a district court order denying his motion for summary judgment on the ground of qualified immunity. For the reasons discussed below, we affirm.

## I.

The facts giving rise to this litigation are adequately set forth in our previous decisions and will be repeated here only as necessary to elucidate the issue presented by this case. On the morning of January 6, 1975, William Lowe, an inmate at the federal penitentiary at Terre Haute, Indiana died in the prison's hospital.[1] Shortly before his death, Lowe, on the recommendation of the hospital's sole full-time physician,[2] Dr. Silverman, had ingested the drug Demeral. At the time he prescribed the drug, Dr. Silverman was at home and despite the protests of the physician's assistant at the scene, adamantly refused to come to the prison hospital. In addition, Silverman rejected the suggestion that Lowe be transferred to an area hospital.

The death of William Lowe prompted an investigation by defendant Robert Brutsche, the medical director of the federal prison system.[3] During the course of his investigation, Brutsche visited the Terre Haute Prison where he interviewed several prison officials about alleged problems in the administration of medical services. Based on these interviews and his own observations, Brutsche recommended that Silverman[4] be relieved of his duties and that the record-keeping procedures at the hospital be improved. Silverman ultimately resigned as the hospital's physician leaving a vacancy that was not filled for the next several months. Brutsche, how-

---

1. Lowe's death sparked a two-day work stoppage by inmates at Terre–Haute. *See Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1986).

2. In addition to Silverman, the prison employed five part-time physicians on a rotating basis.

3. Brutsche's duties included planning, implementing, directing and controlling the health care programs for some 20,000 inmates at over 30 penal institutions. Defendant, however, did not have responsibility for the daily administration of health care to inmates.

4. Silverman was 72 years old, suffered from cerebral arteriosclerosis, and had been taking Valium for depression at the time of Lowe's death.

ever, did not check whether his proposed changes were implemented.

Between January 6, 1975, the date of Lowe's death, and August, 1975, two more inmates died at the prison's hospital. The first prisoner, Frederick McCain, was admitted to the hospital on April 9, 1975 after complaining of breathing problems. McCain, who suffered from chronic bronchitis, was given drugs normally prescribed for his condition and initially appeared to respond favorably. The next morning, however, McCain was dead. Brutsche investigated the circumstances surrounding McCain's death and concluded that adequate medical care had been provided.

On June 6, 1975, inmate Robert Graham reported to the hospital complaining of fatigue, loss of appetite, nausea and malaise. Graham was examined by a physician's assistant who prescribed treatment and sent Graham back to his cell. Three days later, however, Graham, was removed to the Indiana University Medical Center in Indianapolis where he soon passed away. Brutsche also investigated Graham's death and concluded that adequate medical care had been provided.

In August, 1975, Dr. Robert DeGracias assumed the duties of full-time physician at the Terre Haute Prison. On August 14, 1975 inmate Joseph Jones was admitted to the prison hospital after a severe asthma attack. Dr. DeGracias prescribed the drug Thorazine over the phone but refused to come to the hospital to examine Jones personally. At approximately 11:00 p.m., Jones went into respiratory arrest. When DeGracias was informed of this fact he ordered Jones sent to a local hospital. Jones, however, died shortly after he was admitted to the hospital.

Jones' death prompted another investigation by Brutsche. As a result of this investigation, Brutsche made a series of recommendations to the warden. These recommendations included keeping full in-patient records on anyone admitted to the prison hospital, utilizing outside facilities, encouraging better communications among the staff, and implementing a policy concerning the availability of physicians during off-duty hours.

Shortly after Jones' death, his mother filed a *Bivens* suit against Brutsche, De-Gracias, and Norman Carlson, the director of the Bureau of Prisons, claiming that her son's death was caused by the defendants' deliberate indifference to Jones' medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The district court dismissed the complaint on the ground that the federal claim could not survive Jones' death but this court reversed. *Green v. Carlson,* 581 F.2d 669 (7th Cir.1978). The Supreme Court affirmed our decision holding that a federal common law of survivorship existed for *Bivens* suits. *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

On remand, the defendants moved for summary judgment on the ground of qualified immunity. The district court denied this motion and the defendants took an interlocutory appeal pursuant to *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In *Green v. Carlson,* 826 F.2d 647 (7th Cir.1987), we vacated the district court's decision and remanded with directions for the district court to evaluate the entire record in determining the qualified immunity issue. *Id.* at 650. On remand, the district court held that Carlson, as a "supervisor of supervisors," was entitled to qualified immunity but that Brutsche and DeGracias were not. With regard to Brutsche, the district court held that there were several disputed issues that precluded the entry of summary judgment in his favor including: (1) whether the physician's assistants were adequately trained; (2) whether DeGracias had received any instruction about transporting seriously ill prisoners to area hospitals; (3) whether Brutsche had conducted a thorough investigation after the first death at the prison hospital; (4) whether the fact that the record-keeping recommendations were not implemented prior to Jones' death reflected on Brutsche's liability and (5) whether Brutsche should have implemented a policy concerning the need for physicians to come to the hospital to examine prisoners facing life-threatening conditions

in the wake of Lowe's death. Brutsche now appeals the district court's denial of his qualified immunity motion for the second time. DeGracias has not taken an interlocutory appeal.

## II.

The doctrine of qualified immunity protects government officials performing discretionary functions from liability for civil damages. *Klein v. Ryan*, 847 F.2d 368, 371 (7th Cir.1988). The doctrine itself is not contained in any statute. *See Malley v. Briggs*, 475 U.S. 335, 339, 106 S.Ct. 1092, 1095, 89 L.Ed.2d 271 (1985). Rather, qualified immunity is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if this service entails the risk of personal liability for one's decisions.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court, overruling previous law, held that a purely objective inquiry should be used in determining whether a public official is entitled to qualified immunity. Under the *Harlow* standard, qualified immunity should be granted when the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818, 102 S.Ct. at 2738. The objective standard is designed to protect the public interest in deterrence of and compensation for an official's unlawful conduct while safeguarding the official's ability to make difficult decisions with independence and without fear of consequences. *Id.* at 819, 102 S.Ct. at 2738. Unfortunately, the *Harlow* Court failed to elaborate on the meaning of the term "clearly established right" choosing to have the lower courts develop the definition on a case-by-case basis. *Id.* at 818 n. 32, 102 S.Ct. at 2738 n. 32.

In *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1986), the Supreme Court attempted to provide direction in determining when a right has been clearly established. In *Anderson*, the Court, concerned that the artful pleader could convert the rule of qualified immuni-ty into a rule of virtually unqualified liability by alleging violation of extremely abstract rights, emphasized that the right allegedly violated must have been clearly established in a particularized sense. *Id.* at 639–40, 107 S.Ct. at 3038–39. Thus, while the very action in question need not have previously been held unlawful, the contours of the right must have been established so that the unlawfulness of the defendant's conduct would have been apparent in light of existing law. *Id.* The purpose of this requirement is to ensure that a reasonable official would or should have been aware of the rights he or she may be violating. *Id.*

In the present case, the plaintiff alleged that Brutsche's failure to remedy systemic problems at Terre Haute's medical facility constituted deliberate indifference to the medical needs of inmates. In *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), the Supreme Court explicitly recognized that deliberate indifference to a prisoner's medical needs constitutes cruel and unusual punishment in violation of the eighth amendment. *Estelle*, however, cited several pre–1975 appellate court cases with approval *id.* at n. 10, including *Thomas v. Pate*, 493 F.2d 151 (7th Cir.), *cert. den. sub. nom. Thomas v. Cannon*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974), and the defendant does not dispute that the deliberate indifference standard had been clearly established by 1975. Rather, defendant argues that the contours of the right had not been established with sufficient particularity so that a reasonable official in his position would have known that the alleged conduct was unlawful.

■ Our review of the relevant caselaw reveals two distinct categories of deliberate indifference claims. The first category involves claims of isolated instances of indifference to a particular inmate's medical needs. A prime example of such a case is *Thomas v. Pate* where the plaintiff claimed that he was injected with penicillin despite informing the administering nurse that he was allergic to the drug. The second category involves claims that systemic deficien-

cies at the prison's health care facility rendered the medical treatment constitutionally inadequate for all inmates. *See e.g. Ramos v. Lamm,* 639 F.2d 559 (10th Cir.1980), *cert. den.* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). This case involves allegations that fit under the latter category. Consequently, for purposes of qualified immunity analysis, we must determine whether in 1975, a reasonable official in Brutsche's position would have understood that a failure to correct systemic deficiencies in the prison's medical services akin to those alleged in the plaintiff's complaint constituted deliberate indifference to an inmate's medical needs.

In denying defendant's qualified immunity motion, the district court concluded that *Thomas v. Pate* had clearly established the right at issue. This reliance was misplaced. As noted above, *Thomas v. Pate,* was a category 1 not a category 2 deliberate indifference case. In fact, our independent research has revealed no decision by this court recognizing that a failure to remedy systemic deficiencies in health care services at a prison violated the eighth amendment prior to 1983. *See Wellman v. Faulkner,* 715 F.2d 269 (7th Cir.1983), *cert. den.* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984). Consequently, we are unable to agree with the district court that a controlling precedent in 1975 clearly established that defendant's alleged conduct constituted deliberate indifference to an inmate's medical needs.

■ The presence of a controlling precedent is not, however, a *sine qua non* of a finding that a particular right has been clearly established within the meaning of *Harlow. See Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc), *cert. den.* ── U.S. ──, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). In the absence of a controlling precedent we look to all relevant caselaw in an effort to determine whether at the time of the alleged acts a sufficient consensus had been reached indicating that the official's conduct was unlawful. To state the proposition in another way, we seek to determine whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time. This approach makes eminent sense for it precludes an official from escaping liability for unlawful conduct due to the fortuity that a court in a particular jurisdiction had not yet had the opportunity to address the issue.

After reviewing the relevant case law we conclude that a clear consensus had been reached indicating that a prison official's failure to remedy systemic deficiencies in medical services akin to those alleged in the present case constituted deliberate indifference to an inmate's medical needs. In *Newman v. Alabama,* 503 F.2d 1320 (5th Cir.1974), *cert. den.* 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975), the Fifth Circuit affirmed a district court decision finding that systemic deficiencies in the Alabama prison system violated inmates' eighth amendment rights. Among the deficiencies that the district court noted were inadequate staffing, treatment by unqualified personnel, incomplete medical records and lack of written procedures establishing the duties and responsibilities of the medical personnel—charges that were made against the Terre Haute prison. In affirming the district court's entry of injunctive relief, the court explicitly stated that systemic deficiencies of this type, "present grave constitutional problems." 503 F.2d at 1331.

*Newman v. Alabama,* did not represent a novel interpretation of the eighth amendment in 1974. In *Bishop v. Stoneman,* 508 F.2d 1224, 1226 (2nd Cir.1974), the court, faced with evidence of several disturbing incidents over a short period of time, explicitly asserted that a claim that "medical facilities were so wholly inadequate for the prison population's needs that suffering would be inevitable" is cognizable under section 1983. Moreover, the Eighth Circuit took the same view. In *Finney v. Arkansas Board of Corrections,* 505 F.2d 194, 202 (8th Cir.1974), a class action suit against high state prison officials the court recognized that systemic deficiencies in the administration of medical services are of constitutional significance. These deficiencies included absence of a full-time physi-

cian at frequent intervals, unsatisfactory record-keeping and, most troubling to the court, inadequate emergency procedures. The appellate court found that these conditions required immediate correction and directed the district judge to look to Judge Frank Johnson's decree in *Newman* in fashioning a remedy.[5]

In view of *Newman, Finney* and *Bishop*, we believe that a failure to correct systemic deficiencies in the delivery of health care services at a prison violated clearly established law in 1975. Moreover, given the types of systemic problems addressed in *Newman* and *Finney*, we believe that a reasonable official in Brutsche's position would have known that a failure to remedy the alleged inadequacies at Terre Haute constituted deliberate indifference to the medical needs of the inmate population. Accordingly, we find that the district court properly denied Brutsche's motion for qualified immunity.

AFFIRMED.

---

**5.** The trend established by *Newman, Finney* and *Stoneman,* has been followed by several other circuits. *See Inmates of Allegheny City Jail v. Pierce,* 612 F.2d 754 (3rd Cir.1979); *Hoptowit v. Ray,* 682 F.2d 1237 (9th Cir.1982); *Ramos v.* *Lamm,* 639 F.2d 559 (10th Cir.1980), *cert. den.* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Anderson v. City of Atlanta,* 778 F.2d 678, 686 at n. 12 (11th Cir.1985).