David LIEDTKE, Plaintiff,

v.

Robert PLOECKELMAN, Defendant.

Dennis WALOSZ, Plaintiff,

v.

Robert PLOECKELMAN, Defendant.

James SLOMA, Plaintiff,

v.

Robert PLOECKELMAN, Defendant.

Nos. 92–C–758, 92–C–759, 92–C–760.

United States District Court,
E.D. Wisconsin.

July 22, 1993.

Dwight D. Darrow, Darrow & Dietrich, Sheboygan, WI, for plaintiff.

Michael J. Cieslewicz, Ronald C. Curtis Kasdorf, Lewis & Swietlik, Milwaukee, WI, for defendant.

## OPINION AND ORDER

CURRAN, District Judge.

This consolidated action involves the termination of three City of Sheboygan Falls Police officers, but presents the initial single issue of whether the Defendant Robert Ploeckelman as Chief of Police of Sheboygan Falls had an objectively reasonable belief that the actions he took comported with the due process clause of the Constitution, thus

entitling him to qualified immunity. The court has determined that the Defendant is not entitled to qualified immunity.

On April 29, 1991, Police Chief Robert Ploeckelman terminated the employment of Plaintiff David Liedtke who was a veteran with at least 17 years service. He was discharged for having purchased alcoholic drinks for minor females on two occasions. The written notice from Ploeckelman to Liedtke regarding the disciplinary action (discharge) contained the following notice:

> You have the right to appeal this action by requesting a hearing of the Fire and Police Commission. This hearing, by law, is open to the public. If you should chose to exercise your right to a hearing, you may do so by notifying me in writing within five (5) days of this notice.

Rather than exercise his right to a hearing before the Fire and Police Commission, however, Liedtke executed a "Stipulation and Waiver" dated June 12, 1991, which provided as follows:

1. Patrolman David Liedtke shall appeal the disciplinary termination through the contractual grievance procedure as set forth in Article XXV, *Step 3*.

2. Consequently, Patrolman David Liedtke waives any right he may have to appeal such discipline through the provisions of Section 62.13(5), Wis. Stats.

Liedtke proceeded before the arbitrator which involved briefing and a full hearing during which Liedtke, the Union and the City were all represented by counsel and at which each party had an opportunity to call witnesses and to cross-examine witnesses against the party. In an "Arbitration Opinion and Award" issued by Arbitrator William W. Petrie, dated February 16, 1992, the arbitrator found that the discharge of Liedtke was not supported by proper cause and ordered that the discharge be reduced to a written warning and a 30–day disciplinary layoff. He further ordered that Liedtke be returned to work with full seniority and benefits and with back pay dating from the end of the disciplinary layoff less any interim earnings.

On April 29, 1991, Dennis Walosz was also terminated from his employment with the Sheboygan Falls Police Department for having reported to work intoxicated. Walosz was also given a notification detailing the charges and notifying him of his right to proceed before the Fire and Police Commission. Walosz executed a Stipulation and Waiver, dated June 16, 1991, agreeing to proceed through the contractual grievance procedure as set forth in the collective bargaining agreement. Following a hearing conducted on September 25, 1991, and the filing of post hearing briefs, Arbitrator Barbara W. Doering found that although Walosz reported for duty with an odor of alcohol on his breath and subsequently tested at .10 level of blood alcohol on the preliminary breath test, there was not proper cause for the discharge in view of his 19 years with an unblemished record of service. Walosz was subsequently reinstated, subject to a two-month suspension and a reduction of rank but he received full back pay and benefits.

On August 15, 1991, James Sloma was terminated by Chief Ploeckelman following a citizen complaint on July 19, 1991, that Sloma was making harassing phone calls. The written notice of the disciplinary action recited that the complaint had been investigated and informed Sloma of his right to appeal the action to the Fire and Police Commission. Sloma, however, also executed a Stipulation and Waiver dated September 4, 1991, agreeing to proceed with the grievance procedure set forth in the collective bargaining agreement. In an exhaustive decision dated October 30, 1992, Arbitrator Rose Marie Baron noted that Sloma had been informed of his right to appeal to the Fire and Police Commission but "based on past practice involving two other officers facing discharge, however, Sergeant Sloma was given the option of appealing the termination through the grievance and arbitration procedure, Article XXV, under the existing collective bargaining agreement." From the arbitrator's decision and the record before the court it appears that Sergeant Sloma had a relationship with an individual named Kelly Fink and was not pleased with her decision to end the relationship and move in with her new boyfriend Douglas Renzelman. Sloma embarked on a

course of harassment, including telephone calls made from the station during the middle of the night, patrolling her residence, even though it was outside his jurisdiction, and running license plate checks on the Department's computer on people who were visiting her. He went to places where he suspected she might be, followed her car, and spotlighted Fink and Renzelman and their cars, which the arbitrator found had the effect of intimidating them. This culminated in an early morning incident in which Sloma entered Ms. Fink's apartment while in uniform and armed while Ms. Fink was in the shower and Mr. Renzelman was in her bedroom.

According to the employer, after Renzelman filed a charge concerning the harassing phone calls, Sergeant Sloma lied by stating that all contacts with Ms. Fink in the future would be off duty as they had been in the past. However, it is clear from the eighty-five recorded phone calls which Sergeant Sloma made from the police department to Ms. Fink, in addition to the other incidents, that his relationship with her in the past was not conducted during off duty hours. The employer expressed concern that Sergeant Sloma's credibility as a trial witness would be compromised by this untruth. Finally, Sergeant Sloma was subjected to a prior disciplinary action based on his relationship with Kelly Fink. He was suspended without pay for three days in March of 1989. In the discipline memorandum Sergeant Sloma was notified that additional violations of the rules might result in discharge from the Department. The arbitrator found that Sergeant Sloma had engaged in conduct unbecoming an officer for the second time, that the offenses were serious, that his future ability to perform as a police officer had been impaired, and that the employer therefore had proper cause to discharge him. Sloma's grievance was thus denied.

■ There does not appear to be an issue as to the protectable property interests which each Plaintiff had in his employment with the City of Sheboygan Falls police de-

partment. An employee has a property interest in continued employment when that employee has a "legitimate claim of entitlement" to his job. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court held that due process requires that a public employee with a property right in continued employment be given the opportunity to respond prior to his or her dismissal in addition to whatever procedures are available providing for a post-termination hearing. Neither David Liedtke nor Dennis Walosz appear to have had any type of pre-deprivation hearing, although James Sloma was interviewed several days prior to receiving his notice of termination. The Plaintiff characterizes this as a "form of Garrity interview,"[1] at which Sloma was accompanied by his attorney and was suspended with pay at the close of the interview. Inexplicably, however, the Defendant does not argue that Sloma's interview satisfied the requirement for a pre-deprivation hearing.

■ It is, of course, well settled that the determination of whether a defendant is entitled to qualified immunity from suit is a question of law to be answered by the trial court. The doctrine of qualified immunity protects public officials performing discretionary functions against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Doe v. Bobbitt*, 881 F.2d 510, 511 (7th Cir.1989), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This objective standard is "designed to protect the public interest in deterrence of and compensation for an official's ability to make difficult decisions with independence and without fear of consequences." *Cleveland–Perdue v. Brutsche*, 881 F.2d 427, 430 (7th Cir.1989), *cert. denied*, 498 U.S. 949, 111 S.Ct. 368, 112 L.Ed.2d 331 (1990), *quoted in Meyer v. Robinson*, 992 F.2d 734, 737 (7th Cir.1993).

---

1. The court presumes the Plaintiff is referring to *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616,

17 L.Ed.2d 562 (1967).

The Defendant phrases the qualified immunity issue as whether "a reasonable police chief in the rural, small town position of Chief Ploeckelman would have ... reason to believe that his actions were violative of Plaintiff's due process rights." The Defendant appears to suggest that a small town public official is entitled to a different standard than a public official in a large city. This is not the case. The qualified immunity inquiry is objective and not subjective. "[A]ll public officials are presumed to know clearly established law, whether or not they have in fact ever cracked a law book." *Woods v. Indiana University–Purdue University at Indianapolis,* 996 F.2d 880 (7th Cir.1993) *citing Harlow,* 457 U.S. at 815–19, 102 S.Ct. at 2736–38 and *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). As I have stated, the law was clear at the time of the termination that the Plaintiffs were entitled to a pre-deprivation hearing and Chief Ploeckelman is thus not entitled to qualified immunity on the claims regarding the pre-termination hearing.

As to the post-deprivation hearing, however, the court must find that the Defendant is entitled to qualified immunity. Each of the Plaintiffs clearly waived whatever rights they might have had to a hearing before the Fire and Police Commission and, in the alternative, the court finds that the procedure which they elected comported with their due process rights. They were represented during the arbitration and were allowed to present evidence and in fact Plaintiffs Liedtke and Walosz received most of the relief which they sought.

The court must accordingly find that the Defendant's motion for summary judgment as to the pre-deprivation hearing issue is denied but that he is entitled to qualified immunity as to the post-deprivation procedures. Each of the Plaintiffs will be granted summary judgment on the issue of liability for having been denied his right to a pre-deprivation hearing. The issue of damages, however, remains. The court has scheduled a telephonic conference on August 10, 1993, at 8:30 A.M. This call will be initiated by the court and will be for the purpose of further scheduling. Accordingly,

IT IS ORDERED that the Plaintiffs' motions for summary judgment ARE GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the Defendant's motion for summary judgment IS GRANTED IN PART AND DENIED IN PART.

Because the information which is the subject of the Plaintiffs' motion to compel does not relate to damages, IT IS FURTHER ORDERED that the motion to compel IS DENIED as moot.

Done and Ordered.