### Alan STOVALL, Plaintiff,

### v.

### Joseph MCATEE, Sheriff of Marion County, Indiana, and Marion County Sheriff's Department, Defendants.

### No. IP 94–1866–C G/H.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 24, 1997.

John F. Ittenbach, Sheeks Ittenbach & Johnson, Indianapolis, IN, for plaintiff.

Dale R. Simmons, Assistant Corporation Counsel, Indianapolis, IN, for defendants.

## ENTRY ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HAMILTON, District Judge.

Plaintiff Alan Stovall alleges that defendant Joseph McAtee, Sheriff of Marion County, Indiana, is liable for injuries that Stovall suffered in an assault by other inmates when Stovall was in the lock-up in the Marion County Jail the night of July 3–4, 1994. By order of December 29, 1994, this court referred this case to Magistrate Judge John Paul Godich for all proceedings up to trial, including preparation of recommended decisions on any dispositive motions. The defendants have filed several dispositive motions and related matters. On August 28, 1997, Judge Godich filed a thorough report and recommendation pursuant to Fed. R.Civ.P. 72, and the parties have filed their objections to that recommendation. As explained below, the court adopts Judge Godich's recommendation with one significant exception. The facts set forth below reflect the evidence in the light most reasonably favorable to plaintiff.

On the evening of July 3, 1994, a Marion County Deputy Sheriff arrested plaintiff Alan Stovall for public intoxication. Stovall was transported to the "lock-up" in the Marion County Jail. Stovall is white, 5' 7" tall, and weighs 135 pounds. Later that night, a black inmate in the lock-up approached Stovall and said, "Donuts are coming out in a little while," and "I want yours, white boy." When donuts and milk were given to inmates, Stovall ate his donuts and drank his milk. A little while later, several inmates, including the inmate who had first approached him, assaulted Stovall. Stovall yelled for help two or three times, but no guard came to his assistance and he lost consciousness. It thus appears that the assault occurred without any correctional officers seeing or hearing it. A correctional officer later discovered the unconscious Stovall about 3:30 a.m. He was transported to a hospital. Stovall suffered serious injuries in the assault, including a "blow-out" fracture of an eye socket.

Stovall and his wife Jennifer filed suit under federal and state law. Jennifer Stovall's claims have been voluntarily dismissed upon her motion. Because Alan Stovall was a pretrial detainee at the time of the assault in jail, Judge Godich properly recommended that the court treat his federal claim as a claim for violation of his due process rights under the Fourteenth Amendment. See *Estate of Cole v. Fromm*, 94 F.3d 254, 259 (7th Cir.1996). Judge Godich also recommended that Stovall's claims against the "Marion County Sheriff's Department" be dismissed because under Indiana law it is not a suable entity. The court agrees.

Judge Godich interpreted Stovall's complaint as alleging claims against defendant Joseph McAtee in both his official capacity and his individual capacity. Judge Godich recommended that the court deny the defense motion to dismiss Stovall's federal claims against McAtee in his individual and official capacities, and the claim for punitive damages against McAtee in his individual capacity. Judge Godich also deferred for consideration on summary judgment the defense motion to dismiss to the extent it invoked qualified immunity for McAtee in his individual capacity, immunity under state tort law, and the doctrine of contributory negligence. (Defendants' argument on contributory negligence is that Stovall should have given the other inmate his donuts and milk.) The court agrees in all respects with the recommended resolution of the defense motions to dismiss for the reasons stated by Judge Godich.

That resolution of the motions to dismiss leaves in the case claims by Alan Stovall

under the Fourteenth Amendment against defendant Joseph McAtee in both his individual and official capacities, as well as a claim for negligence based on state law. The state law claim is essentially against Sheriff McAtee in his official capacity. See Ind.Code § 34–4–16.5–5 (local government entity is ordinarily liable for torts of its agents under state Tort Claims Act). Defendants seek summary judgment on all of these claims.[1]

In connection with evaluating the motion for summary judgment, Judge Godich also recommended that the court deny defendants' motion to strike the affidavit of David Zirkle and grant the defendants' motion to strike a document entitled "Plaintiff's Wishard Memorial Hospital Records Summary." The court agrees with the recommendation of Judge Godich on both issues for the reasons he stated.

Stovall does not claim that he alerted any jail officials that he had been threatened by a specific inmate or that he was a member of any identifiable group of inmates especially vulnerable to assaults. His federal claims are therefore based on alleged deliberate indifference to his need for protection from a generalized risk of harm to detainees under the conditions in the Marion County lock-up. Cf. *Jelinek v. Greer*, 90 F.3d 242, 244 (7th Cir.1996) (plaintiff asserted that prison official had notice of specific threat of harm to plaintiff); *Lewis v. Richards*, 107 F.3d 549, 553) (7th Cir.1997) (notice of specific threat not necessary if inmate is member of identifiable group for whom risk of assault is substantial). The courts recognize that some level of inmate-on-inmate violence in jails and prisons is virtually inevitable, *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir.1991), but that fact does not give jail officials a license to turn a blind eye to the risk of such violence, see *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (being violently assaulted in prison is

not part of the penalty that criminal offenders pay for their crimes against society).

The parties debate vigorously the applicable standard for such claims based on a generalized risk of harm. The defendants argue that proof of a "reign of terror" is needed. See *Walsh v. Brewer*, 733 F.2d 473, 476 (7th Cir.1984) (noting that threat of harm may be actionable under Eighth Amendment even in absence of actual assault if conditions in prison amount to "reign of terror"). Plaintiff argues that conditions do not have to be that desperate before a pretrial detainee's constitutional right to be protected from violence at the hands of other inmates is violated. See *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir.1995) (following *Farmer v. Brennan*, issue is whether sheriff was deliberately indifferent to "substantial risk of serious harm" faced by inmates in county jail lock-up).

Judge Godich has explained in detail why the evidence, when viewed in the light reasonably most favorable to Stovall, could permit a jury to find an official policy of deliberate indifference to substantial threats of inmate-on-inmate violence in the Marion County lock-up. See Magistrate Judge's Report and Recommendation at 28–30, 44–45 (incorporating earlier, more detailed discussion of evidence relevant to individual capacity claim). The evidence on the extent of the violence showed that reported incidents of violence occurred in the lock-up about daily over three years. The lock-up commander testified that inmate-on-inmate assaults were not unusual and occurred on a "regular" basis (though "not an every hour thing"). The court agrees that plaintiff has raised a genuine issue of fact as to whether the level of violence was so substantial as to raise "a substantial risk of serious harm" to large numbers of lock-up inmates.[2]

Plaintiff must also prove that Sheriff McAtee acted with deliberate indifference to the

---

**1.** The court refers to "defendants" in the plural because McAtee in his official capacity is different from McAtee in his individual capacity. If McAtee were to leave office, the new sheriff would be substituted as the defendant on the official capacity claim, but McAtee would remain in the case as defendant on the individual capacity claim.

**2.** The court will leave until trial the task of framing jury instructions that spell out more precisely the applicable standard. In particular, the court will decide at trial whether the jury should be instructed under a "reign of terror" standard.

risk of violence in the lock-up. Plaintiff's theory is that McAtee had notice of the extent of violence in the lock-up, but delegated the problem to the lock-up commander and deliberately turned a blind eye to the problem. Plaintiff attributes specifically to McAtee: (a) a failure to enforce the jail policy requiring frequent rounds during which guards look at every inmate in the lock-up; (b) the absence of a policy informing inmates that they can request segregation if they are concerned about their safety; (c) the failure to segregate intoxicated inmates who are vulnerable to assault by other inmates; and (d) the fact that video surveillance in the lock-up is essentially useless (as well as the fact that its uselessness was apparent to inmates). Plaintiff attributes this deliberate indifference to McAtee because he was generally aware of the level of violence in the lock-up and delegated management of the lock-up to his jail staff while failing to ensure that jail staff took reasonable steps (including steps required by Indiana law) to reduce the risk of violence among inmates. Judge Godich explained why the evidence is sufficient to permit an inference of deliberate indifference under *Farmer v. Brennan,* and the court agrees. Sheriff McAtee is the final policymaking authority in the county with respect to these matters, and summary judgment will therefore be denied as to the official capacity claim against McAtee.

■ The claim against Sheriff McAtee in his individual capacity is more problematic. McAtee cannot be held liable as an individual on the basis of *respondeat superior.* Plaintiff must show that McAtee was personally responsible for any alleged violation of his federal rights. The required showing of responsibility is similar, but not identical, to the showing required for a claim based on official policy or practice. McAtee seeks summary judgment on this claim under the doctrine of qualified immunity. The dispositive issue on the defense of qualified immunity is whether the applicable law was so clearly established that a reasonable official in the defendant's position would have recognized that his conduct violated the Constitution. See *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Eversole v. Steele,* 59 F.3d 710, 717 (7th Cir.1995).

Judge Godich has recommended that summary judgment on grounds of qualified immunity be denied. To prove a violation of the Constitution in this case, plaintiff must prove deliberate indifference on the part of the individual defendant. As noted, Judge Godich concluded that a reasonable jury could find that McAtee as a policy-maker for the county was deliberately indifferent to the risk of inmate-on-inmate violence in the lock-up, and the court agrees. Further, Judge Godich reasoned that the law was clearly established that deliberate indifference to a threat of harm to an inmate violated the inmate's constitutional rights. Magistrate Judge's Report and Recommendation at 46, citing *Haley v. Gross,* 86 F.3d 630, 646 (7th Cir.1996). More generally, Judge Godich cited cases that hold or clearly suggest that a claim of qualified immunity is not logically or legally compatible with evidence that the defendant acted with deliberate indifference to an inmate's safety. See Magistrate Judge's Report and Recommendation at 46, citing *Albers v. Whitley,* 743 F.2d 1372, 1376 (9th Cir.1984) (qualified immunity is not available if plaintiff can show deliberate indifference to support Eighth Amendment claim), *rev'd on other grounds,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986); see also *Jackson v. McIntosh,* 90 F.3d 330, 332 (9th Cir.1996) (because district court properly denied summary judgment for defendants on claim of deliberate indifference to inmate's medical needs, defendants also were not entitled to summary judgment based on qualified immunity); *Delgado–Brunet v. Clark,* 93 F.3d 339, 345 (7th Cir.1996) (*Farmer v. Brennan* did not substantially alter Seventh Circuit law on deliberate indifference; if there were genuine issue of fact as to deliberate indifference to known threat to specific inmate, defendant would not be entitled to summary judgment based on qualified immunity).

The question is a close one, but the court disagrees and finds that McAtee is entitled to summary judgment on the claim against him in his individual capacity. In evaluating a defense of qualified immunity, the issue is not whether a reasonable jury could find that McAtee responded with "deliberate indifference" to the circumstances he faced. The issue is whether the law was so clearly

established that a reasonable official in McAtee's position would have recognized that his conduct would violate the Constitution. In making this determination, the applicable legal standard must be sufficiently specific and concrete. Although it was well established in July 1994 that deliberate indifference to a substantial risk of serious harm resulting from inmate-on-inmate violence could violate the Constitution, the analysis of McAtee's qualified immunity defense requires a more specific focus on the facts he faced at the time. See, *e.g., Donovan v. City of Milwaukee,* 17 F.3d 944, 951–53 (7th Cir.1994) (finding qualified immunity applicable to excessive force claim where circuits had been divided at relevant time as to whether "deadman" roadblocks amounted to use of deadly force); *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.1988) (*en banc*) (issue is whether law was clear in relation to specific facts confronting the defendant public official when he acted). The constitutional standard of liability here is stringent— deliberate indifference to a substantial threat of serious harm—but that finding does not necessarily foreclose the possibility of a qualified immunity defense. In fact, the Seventh Circuit has applied the doctrine of qualified immunity to claims for deliberate indifference to an inmate's health and safety in circumstances where the constitutional boundaries had not yet been specifically mapped by case law or otherwise. See, *e.g., Williams v. O'Leary,* 55 F.3d 320, 324 (7th Cir.1995) (qualified immunity applied where law did not clearly establish that pattern of negligent acts in providing health care could, without more, amount to deliberate indifference to inmate health); *Williams v. Anderson,* 959 F.2d 1411, 1416 (7th Cir.1992) (qualified immunity applied to deliberate indifference claim under Eighth Amendment where law did not clearly establish that inmate had right to refuse forced administration of antipsychotic drugs). Cf. *Henderson v. DeRobertis,* 940 F.2d 1055, 1059–60 (7th Cir.1991) (considering but rejecting qualified immunity defense on claim of deliberate indifference to inmates' need for heat where right to adequate heat was well established); *Santiago v. Lane,* 894 F.2d 218, 225 (7th Cir.1990) (considering but rejecting qualified immunity defense on claim of deliberate in-difference to specific threat to inmate's safety).

One decision that wrestles in some detail with this tension between qualified immunity and the deliberate indifference standard is *Cleveland–Perdue v. Brutsche,* 881 F.2d 427 (7th Cir.1989). The case presented claims of deliberate indifference to the medical needs of inmates at a federal prison. All parties agreed that the constitutional standard of "deliberate indifference" had been established by the relevant time, but the defendant argued that "the contours of the right had not been established with sufficient particularity so that a reasonable official in his position would have known that the alleged conduct was unlawful." 881 F.2d at 430. The Seventh Circuit explained:

Our review of the relevant caselaw reveals two distinct categories of deliberate indifference claims. The first category involves claims of isolated instances of indifference to a particular inmate's medical needs. A prime example of such a case is *Thomas v. Pate* [493 F.2d 151 (7th Cir. 1974) ] where the plaintiff claimed that he was injected with penicillin despite informing the administering nurse that he was allergic to the drug. The second category involves claims that systemic deficiencies at the prison's health care facility rendered the medical treatment constitutionally inadequate for all inmates. *See e.g. Ramos v. Lamm,* 639 F.2d 559 (10th Cir.1980), *cert. den.* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). This case involves allegations that fit under the latter category. Consequently, for purposes of qualified immunity analysis, we must determine whether in 1975, a reasonable official in Brutsche's position would have understood that a failure to correct systemic deficiencies in the prison's medical services akin to those alleged in the plaintiff's complaint constituted deliberate indifference to an inmate's medical needs.

In denying defendant's qualified immunity motion, the district court concluded that *Thomas v. Pate* had clearly established the right at issue. This reliance was misplaced. As noted above, *Thomas v. Pate* was a category 1 not a category 2

deliberate indifference case. In fact, our independent research has revealed no decision by this court recognizing that a failure to remedy systemic deficiencies in health care services at a prison violated the eighth amendment prior to 1983.

881 F.2d at 430–31. The Seventh Circuit went on to conclude, however, that at the relevant time a "clear consensus had been reached" showing that such systemic deficiencies like those alleged would be sufficient to violate the Eighth Amendment. The court therefore affirmed the denial of qualified immunity. *Id.* at 431–32.

For years it has been clearly established that deliberate indifference to a specific threat of harm to an inmate is actionable, and that deliberate indifference in that context means criminal recklessness. See *Haley v. Gross,* 86 F.3d at 646. But this case is different. It is what the *Cleveland–Perdue* court described as a "category 2" case because it concerns not a specific threat but generalized risks and systemic deficiencies in security arrangements for inmates in the lock-up. The extent of those risks and deficiencies must be the focus of qualified immunity analysis: whether the generalized risk of dangers to inmates had become so severe as to present such a "substantial risk of serious harm" to impose a duty on McAtee to respond reasonably to the risks. As Judge Godich's opinion shows with respect to the debate over the "reign of terror" language, the level of violence in a jail or prison needed to establish a sufficiently pervasive risk of harm is anything but clear under the law, at least in the Seventh Circuit. And if the generalized and pervasive danger is sufficiently serious, the Constitution demands a response by officials that may include changes in staffing and institutional procedures, changes in equipment and training, or some combination of these. The constitutional problem—and the problem facing the defendant official—is more complex than in cases where, for example, a prison guard receives a prisoner's credible complaint that his cellmate is threatening him. Responding to generalized threats of violence requires a public official to weigh factors of cost, risk, and levels of compliance with standard operating procedures. A public official may face a host of possible solutions to the problem of inmate violence. An official responding to such threats must make deliberate decisions about the personnel and other resources that will be committed to reducing the risk. Without putting their personal assets at risk, officials may make such deliberate decisions in view of the law as it is, not the law as it may evolve. They may invoke the doctrine of qualified immunity for that personal protection.

As Judge Godich's opinion shows, there is considerable room for disagreement among courts about when a generalized atmosphere of violence in a prison or jail becomes so severe as to present a "substantial risk of serious harm" to large numbers of inmates so that the Eighth and/or Fourteenth Amendments are implicated. As the Sixth Circuit has observed, prison conditions are judged by vague standards, *Birrell v. Brown,* 867 F.2d 956, 958 (6th Cir.1989), and the Seventh Circuit has noted that the phrase "deliberate indifference" "evades rather than expresses a precise meaning." *Duckworth v. Franzen,* 780 F.2d 645, 652 (7th Cir.1985). When a defense of qualified immunity is raised, the plaintiff has the burden of showing that the right he invokes was "clearly established" at the relevant time with sufficient specificity under the circumstances. That burden is met most often by referring the court to prior cases finding violations of the Constitution under similar circumstances. In responding to McAtee's qualified immunity defense, plaintiff has not cited any comparable cases from the relevant time. Neither the court nor Judge Godich has located such cases. Perhaps the most analogous case is *Hale v. Tallapoosa County,* 50 F.3d 1579 (11th Cir.1995). That opinion, decided after the assault on plaintiff Stovall, reversed a grant of summary judgment on official and individual capacity claims against a county sheriff for deliberate indifference to the risk of inmate-on-inmate violence in a county jail lock-up. Although the Eleventh Circuit's opinion provides substantial support for plaintiff's official capacity claim against McAtee, it cannot be used to show that the law was so clearly established in 1994 as to subject McAtee to individual liability. (The court in *Hale* did not specifically address any issue of qualified immunity.) McAtee is enti-

tled to summary judgment on plaintiff's claim against him in his individual capacity.

In light of this conclusion on qualified immunity, the court has considered whether it should revisit the defendants' motion for summary judgment on the official capacity claim and whether the facts would permit an inference of deliberate indifference. There is admittedly some tension between the court's conclusions on these questions. But that tension is the product of the difference between proving that an official policy or practice caused a constitutional deprivation and proving that a particular public official was personally responsible for what he should have known at the time was a constitutional deprivation. A claim based on an official policy or practice allocates financial responsibility for injuries directly to the public whose officials have had to balance competing interests and demands, and whose deliberate decisions about the management of risks and resources have caused the constitutional deprivation. A claim based on personal responsibility makes the individual official's personal assets available to pay compensatory damages, punitive damages, and attorneys' fees and costs. The plaintiff has come forward with evidence showing Sheriff McAtee's personal responsibility for safety policies at the lock-up. By allowing McAtee to invoke qualified immunity as to claims against him as an individual, the court recognizes the uncertainty about legal standards applicable to claims based on pervasive and generalized threats of harm. That is the basic purpose of the doctrine of qualified immunity. The case will proceed on the official capacity claim against Sheriff McAtee, but not on the individual capacity claim.

The court agrees with Judge Godich that the court should retain continuing jurisdiction over plaintiff's claim under state law. The court also agrees with Judge Godich's analysis of the immunity question raised under the Indiana Tort Claims Act. Defendants' motion for summary judgment is denied as to the state law claim.

Defendants have asked in the alternative to reopen discovery for the opportunity to depose David Zirkle to test his affidavit in more detail. They will have that opportunity. Judge Godich will conduct a pretrial conference to set a final trial date and to deal with any additional matters concerning final trial preparations.

### Conclusion

For the reasons set forth above and in Judge Godich's Report and Recommendation, the defense motion to dismiss is GRANTED as to claims against defendant "Marion County Sheriff's Department," and DENIED in all other respects; the defense motion for summary judgment is GRANTED as to plaintiff's claims against Joseph McAtee in his individual capacity (including the claim for punitive damages), but DENIED in all other respects; and the defense motion to strike is GRANTED as to the summary of Wishard Hospital records and DENIED as to the affidavit of David Zirkle.

So ordered.