**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Prince PAGE, Jr. and Robert Jones, a/k/a Old Man James, Defendants-Appellants.**

**Nos. 77–1856, 77–1857, and 77–2186.**

United States Court of Appeals, Seventh Circuit.

Argued March 3, 1978.

Decided July 31, 1978.

Thomas A. Swihart, Stephen M. Sims, Fort Wayne, Ind., for defendants-appellants.

Richard A. Hanning, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before PELL and WOOD, Circuit Judges, and FLAUM, District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants Page and Jones were tried together before a jury and found guilty on all counts.[1] Page was charged with two counts of distributing heroin in violation of 21 U.S.C. § 841(a)(1). Jones was charged in a separate count with possession of heroin with intent to distribute in violation of § 841(a)(1). Both were charged with conspiracy to distribute heroin in violation of 21 U.S.C. § 846.

On appeal both appellants claim the evidence was insufficient to sustain their convictions. Jones also contends the lower court erred in denying his pretrial motion to suppress certain evidence.

I.

Since appellants challenge the sufficiency of the evidence, we set out the evidence against both men in some detail. In early February 1977, Drug Enforcement Administration Task Force Officer Ernest Stanford worked undercover in Fort Wayne, Indiana. James Jarnnigan, also known as James Hunter, Stanford's confidential informant, introduced the DEA agent to people allegedly having connections for heroin, one being J. C. Beachem. After taking steps to become known as a dealer, Stanford was able to overcome Beachem's reluctance to do business with a stranger. When a deal for the purchase of an ounce of heroin fell through on February 23 because "runner" failed to arrive from Chicago, Beachem told Stanford he could obtain a somewhat lesser quantity from his Fort Wayne connection. Stanford said he would deal with that connection. Beachem then drove with Hunter and Stanford to a location on Hanna Street where he introduced Stanford to defendant Page. Page advised Stanford that Jones was his source for heroin, and that he could procure a quarter ounce of heroin from him if Stanford desired. After Stanford agreed to that, he, Beachem and Hunter, in one car, followed Page's truck near to a three-story apartment house on East DeWald Street in Fort Wayne, but at Page's request avoided parking directly in front of the apartment. While the others waited in the car, Page entered the apartment building. After about five minutes he returned to the car, saying that Jones would have no heroin before midnight. The group, after Page made another trip into the apartment to

---

* The Honorable Joel M. Flaum, United States District Judge for the Northern District of Illinois, is sitting by designation.

1. The court sentenced Page to concurrent terms of six years plus a three-year special parole, and Jones on both counts to eight years plus a three-year special parole term, the sentences to run concurrently. In addition, Jones was fined $1000.

secure the approval of Jones, made plans to return the next day. The next day they returned, parking near the apartment building as before. A DEA surveillance team was also parked nearby. Stanford gave Page $450 in marked bills to be used to purchase a quarter ounce of heroin. Page went into the house, returning in several minutes and gave Stanford two $30 sample packets of heroin, along with his change from the $450.[2] At Stanford's insistance, Page went back into the house, ostensibly to ask when he could obtain a full quarter ounce. Page returned and told Stanford that Jones would sell the heroin in an hour if they were satisfied with the samples. The group temporarily left DeWald Street.

Later in the day on February 24, the four returned to DeWald. On the way Page told them that Jones had only $150 worth of heroin. Stanford gave Page that amount of money for the heroin. Page entered the apartment building, returning in a few minutes with a tin foil packet containing the heroin.[3] Stanford paid Page and Beachem $20 each for their efforts, and the group drove away from DeWald Street.

The three-story apartment building on DeWald Street consists of two apartments on each floor. Jon Tessman owned and managed the building during the events in this case. Tessman rented apartment 5, which was one of the third-floor apartments, to Jones, who was legally considered blind. The rent receipts, at Jones' direction, were made out to a David Armstrong. Jones had his correct name affixed to the mailbox. Jones also paid the rent for apartment 6, the other third-floor apartment, and told Tessman to make out the receipts to a Willie Duncan. Tessman never received the rent for apartment 6 without receiving Jones' rent for apartment 5. Tessman never saw Duncan or anyone else who identified himself as the tenant of apartment 6. Jones had keys to both apart-ments. Ivan Boggs, Jones' son, testified that Duncan lived in apartment 6 in August of the previous year, when Boggs stayed with his father in apartment 5. By February, 1977, there was only one tenant in the building other than occupants of the third floor. Tessman regularly saw a man in Jones' apartment he thought stayed with Jones but did not know his name. The man was identified at trial as Page.

On April 7, 1977, pursuant to a warrant, DEA and Alcohol, Tobacco and Firearms agents conducted a search for certain weapons alleged to be housed on the third floor of the apartment. Two agents entered apartment 5 through a window after an automated lift hoisted them to the second floor fire escape. One agent said he glimpsed someone in the apartment, but that person hurried away. Within a few minutes, three other agents knocked on the door of apartment 6 and identified themselves. When no one responded, the agents made a forced entry. During this activity the agents heard the sound of a flushing toilet within the apartment. After all five agents entered apartment 6, Jones and another man were found standing in the living room. The agents collected powder from the toilet seat which subsequent lab results showed contained .3% heroin, with quinine and an unidentified dilutant. In the course of the search for the specified weapons, which were not found, other weapons were found. The agents found additional heroin mixed with quinine, procaine and lactose. Also found were an empty quinine bottle, lactose, dormin and two heat sealers, items commonly used to cut and package heroin for distribution. Jones had the key to apartment 6 in which he kept various personal items including his false teeth.

At trial, Page testified that he, Beachem and Hunter intended to "rip off" Stanford by supplying him only "mix" (i. e., harmless chemicals that would simulate a heroin high

---

2. Lab analysis later showed the packets Page gave Stanford contained 3.3% heroin concentration, along with methapyrilene, procaine, quinine and lactose.

3. Lab analysis showed this packed contained heroin in 4.2% concentration, mixed with methapyrilene, quinine and lactose.

for about an hour after injection). He insisted there was no intention to sell heroin. Page said Jones had nothing to do with this plan or the events of the sale, and that Page had directed Stanford to the DeWald address apparently because it was an easy and familiar site from which to work the scheme. Moreover, Page testified that he never went beyond the vestibule on the first floor of the building during the sale. Page said he knew Jones from his own days as a heroin addict, but denied Jones gave him any heroin on February 24.

## II.

Both Page and Jones assert the evidence is insufficient to sustain their convictions on any of the counts. Such a challenge bears a heavy burden, as this court must construe all the evidence in the light most favorable to the prosecution. In doing so, we keep in mind that it is the jury's right to weigh the evidence, determine credibility and draw justifiable inferences in coming to its verdict. If substantial evidence supports the jury's decision, we will not reverse it. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Cardi*, 478 F.2d 1362 (7th Cir. 1973).

■ First we deal with Page's challenge to the sufficiency of the evidence to justify his conviction for distributing heroin. Agent Stanford's uncontradicted testimony about the events leading up to Page's arrest shows that Page told the agent he would obtain heroin and did. Page took the agent's money in exchange for packages later shown to contain heroin, including the two samples. Page testified that his statements and actions regarding the narcotics buy were all part of a scheme to defraud Stanford, and intimated someone else blended the heroin into the mix without Page's knowledge. The jury understandably did not believe Page's story. The events to which Stanford testified are sufficient to demonstrate that Page deliberately sold heroin.

■ We turn to Jones' challenge to his conviction for possessing heroin with intent to distribute. To convict Jones under the

indictment, the prosecution had to establish the facts of Jones' possession of and intent to distribute the narcotics found in the apartment in which he was discovered during the April 7 raid. The evidence adduced at trial on this charge was all circumstantial. Contrary to Jones' assertions, this circuit does not require that circumstantial evidence, in order to sustain a jury verdict, must exclude every reasonable hypothesis but that of guilt. The only requirement is that the circumstantial evidence need be strong enough to convince a jury beyond a reasonable doubt of the defendant's guilt. *United States v. Wigoda*, 521 F.2d 1221 (7th Cir. 1975), *cert. denied*, 424 U.S. 949, 96 S.Ct. 1421, 47 L.Ed.2d 355 (1976).

The evidence indicates Jones knew of the heroin's presence in apartment 6. The attempt to dispose of the heroin, coupled with Jones' refusal to respond to authorities at the door once they identified themselves leads to the inference that, in the initial moment of panic, Jones' priority was to get rid of the drugs before the authorities entered. Jones' knowledge of the heroin's presence may also be inferred from evidence showing Jones had the full use and control of apartment 6 to the extent permitting an inference of at least constructive possession. *United States v. DiNovo*, 523 F.2d 197 (7th Cir.), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975). The nature and number of Jones' personal belongings in apartment 6 is consistent only with his joint use of both apartments. When taken together with uncontradicted testimony that Jones also paid rent for apartment 6 and that no one had seen the other claimed resident of apartment 6 since the previous September, the evidence was sufficient to support the reasonable inference that Jones occupied and used both apartments as his own, and effectively controlled what occurred in both places. The presence of the heroin, together with the other items commonly used to cut, package and distribute heroin, and the other circumstances are sufficient to sustain the finding that Jones was in the heroin business on this occasion with Page.

■ Jones also contends the search warrant issued for the April 7 raid was invalid, requiring suppression of evidence found in the search. Jones asserts the warrant did not adequately specify the area to be searched. The warrant authorized a search of the entire third floor of the DeWald apartment building, and that area was named in the affidavit supporting the warrant as Jones' residence. A warrant calling for the search of an entire apartment building is specific enough to withstand challenge if the separate apartments, despite appearances, are actually used as a person's single living unit. *United States v. Hinton*, 219 F.2d 324 (7th Cir. 1955). Certainly this reasoning applies to a single floor in a small apartment building. In view of the evidence pointing to the entire third floor as Jones' residence, we hold there was no need to suppress the evidence obtained in the search of both so-called apartments on the third floor used and occupied by Jones.[4]

### III.

■ We turn now to the conspiracy convictions of both defendants. The sole issue raised on appeal is whether or not sufficient evidence existed of their involvement in an agreement to distribute heroin. We conclude that there was sufficient evidence.

Appellant Page admits that the uncontradicted facts show he joined a conspiracy with alleged drug dealer Beachem, and that his activities in arranging the trips to DeWald Street and his actions on arrival there constitute overt acts in furtherance of the conspiracy. However, he denies possessing the requisite intent to sell heroin. Considered in the light most favorable to the government, the events that transpired disclose sufficient facts from which the jury could conclude beyond a reasonable doubt that Page conspired to sell heroin.

Regarding Jones' participation in the conspiracy, the prosecution's non-hearsay evidence established that the drug deals centered on and around the premises on DeWald occupied by Jones. The circumstances all point to him as the source. Only slight evidence is required to connect an alleged co-conspirator with the conspiracy. *United States v. Calaway*, 524 F.2d 609, 612 (9th Cir. 1975). The government emphasizes that the April 7 raid on Jones' apartment uncovered heroin cut in a manner similar to that sold to Stanford, and also turned up cutting agents of the same generic type found in Page's heroin. Page's testimony shows he had known Jones from prior years when Page was an addict. Jones' landlord testified Page was a frequent visitor to Jones. Page was in and out of the DeWald apartment building during the negotiations and sale. From this evidence, the prosecutor asserts the jury could find and infer that Page and Jones were involved in the transaction together.

Conspiracies are by their nature carried out in secret, and direct evidence of agreement rarely is possible. Circumstantial evidence is permissible since as a practical matter that evidence is often all that exists. *Glasser, supra; United States v. Santos*, 385 F.2d 43 (7th Cir. 1967); *United States v. Rodriguez*, 509 F.2d 1342 (5th Cir. 1975).

We hold there was sufficient evidence from which the jury could determine beyond a reasonable doubt that a conspiracy existed.

The convictions of Page and Jones are hereby affirmed.

AFFIRMED.

---

4. Probable cause existed for the weapons search, and Jones' contention that the warrant was a mere pretext to search for drugs is groundless. Jones shows only that one drug agent said he suspected narcotics might be found. *See Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). The drugs in open view were contraband, and need not have been listed in the warrant to make their seizure proper.