Talmadge McDONALD, III, a Minor, by His Mother and Next Friend, Glynis R. McDONALD, Plaintiff–Appellee,

v.

Patrick E. HASKINS, Defendant–Appellant.

No. 91–2045.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1992.

Decided July 1, 1992.

George E. Weaver, Robert C. Gislason (argued), Chicago, Ill., for plaintiff-appellee.

Thomas G. DiCianni (argued), Steven V. Hogroian, Ancel, Glink, Diamond & Cope, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Police Officer Patrick Haskins brings this interlocutory appeal—as is his right, *see Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985)—from the district court's denial of his Rule 12(b)(6) motion to dismiss on qualified immunity grounds Talmadge McDonald's excessive force claim brought under 42 U.S.C. § 1983. One may certainly raise an immunity defense in a motion to dismiss; this means, however, that the only facts before us on appeal are those alleged in the complaint, which at this juncture we must take as true. *See K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 847 (7th Cir.1990).

The pertinent facts alleged in McDonald's complaint are as follows. During a search of the McDonald residence on October 27, 1989, Officer Haskins held a gun to the head of McDonald, a 9–year-old child, and threatened to pull the trigger. At the time of the incident, McDonald posed no threat to the safety of Haskins or any other police officer present, was not actively resisting arrest or attempting to evade arrest by fleeing, and was not en-

gaged in any assaultive behavior toward Haskins or the other officers. Further, McDonald was neither under arrest nor suspected of committing a crime, was not armed, and was not interfering or attempting to interfere with Haskins or any other officers in the execution of their duties.

*Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), held that all excessive force claims against law enforcement officers, whether in the course of an arrest, investigatory stop, or other "seizure" of a free citizen, must be analyzed under the Fourth Amendment's "objective reasonableness" standard. Our inquiry looks to "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872.

The relation between *Graham*'s purely objective test for excessive force claims and the comparable approach adopted in *Harlow v. Fitzgerald* for determining qualified immunity, *see* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (whether an official is protected by qualified immunity depends upon the "objective legal reasonableness" of the action), is somewhat uncertain. *Compare Brown v. Glossip,* 878 F.2d 871 (5th Cir.1989) (even if plaintiff proves excessive force, in order to overcome defendant's qualified immunity defense plaintiff must still allege facts sufficient to show that defendant did not act in "objective good faith" under *Harlow* test) *with Calamia v. City of New York,* 879 F.2d 1025 (2d Cir.1989) (showing excessive force under *Graham* test sufficient to demonstrate that officer did not act in "objective good faith"). Although *Titran v. Ackman,* 893 F.2d 145, 146 (7th Cir.1990), suggested that this Circuit would opt for the Second Circuit's approach, we need not decide that matter here. It is sufficient for our purposes to determine whether, at the time of the alleged seizure, a reasonable officer could have believed that Haskins' conduct was constitutional "in light of clearly established law and the information [Haskins] possessed" at the time the incident occurred. *See Anderson v. Creigh-*

*ton,* 483 U.S. 635, 639, 641, 107 S.Ct. 3034, 3038, 3039, 97 L.Ed.2d 523 (1987); *see also Juriss v. McGowan,* 957 F.2d 345, 348–49 (7th Cir.1992); *Auriemma v. Rice,* 910 F.2d 1449, 1452 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).

■ Haskins contends he is entitled to immunity because, under the law in force on October 27, 1989, *see Elliott v. Thomas,* 937 F.2d 338, 341 (7th Cir.1991) (question on interlocutory appeal is state of the law when defendant acted), *cert. denied,* — U.S. —, 112 S.Ct. 973, 117 L.Ed.2d 138 (1992), it was not clearly established "that it was an unconstitutional use of force for a police officer to point his gun at the head of a resident of an apartment ongoing [sic] a lawful search." Def.'s Br. at 9. He further maintains that his immunity defense should succeed "if no case exists that proscribes the defendant's conduct." *Id.* at 10.

Although Haskins is correct that we must characterize the right in question with particularity, *see Auriemma,* 910 F.2d at 1455, he errs in maintaining that qualified immunity cannot be found absent a case with facts analogous to the one at hand. The guiding principle, of course, is that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. The level of generality at which the relevant legal "rule" is identified cannot be so abstract as to convert the rule of qualified immunity into a rule of virtually unqualified liability. *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038; *see K.H. ex rel. Murphy,* 914 F.2d at 851. But this does not require a prior case that is "precisely on all fours on the facts and law involved here." *Landstrom v. Illinois Dep't of Children & Family Servs.,* 892 F.2d 670, 676 (7th Cir.1990); *see Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 431 (7th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 368, 112 L.Ed.2d 331 (1990); *Lojuk v. Johnson,* 770 F.2d 619, 628 (7th Cir.1985), *cert. denied,* 474 U.S. 1067, 106 S.Ct. 822, 88 L.Ed.2d 795 (1986). Rather,

McDonald must adequately plead the violation of a constitutional right that is "sufficiently particularized to put [Haskins] on notice that [his] conduct probably is unlawful." *Landstrom*, 892 F.2d at 676 (quoting *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir.1986)). Although its application is rarely as simple as its articulation, "[t]he test for immunity is whether the law is clear in relation to the specific facts confronting the public official when he acted." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.) (*en banc*), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988).

As to the state of the law on October 27, 1989, Haskins latches onto dicta from *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989), *cert. denied*, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990), which states that "the action of a police officer in pointing a gun at a person is not, in and of itself, actionable.... Where the officer merely points a gun at a suspect in the course of arresting him, the suspect would have no basis for claiming that he had been seized with excessive force in violation of the constitution." Yet the *Wilkins* standard, by its own terms, applies to an officer's actions *in the course of arresting* a suspect. Here, according to the facts in the complaint (which, for present purposes, we accept as true) McDonald was not being arrested, nor was he even suspected of committing a crime.

■ Indeed, Haskins' representation of the salient facts—that it was not excessive force "for a police officer to point his gun at the head of a resident of an apartment ongoing [sic] a lawful search"—omits those most relevant here: McDonald was not under arrest; Haskins did not merely point a gun at McDonald but rather, held a gun to McDonald's head and threatened to pull the trigger; and McDonald was, at the time the incident occurred, only nine years old. Moreover, McDonald, according to the complaint, posed no threat to Haskins, to his fellow officers, or to the general community. These are the very ingredients relevant to an excessive force inquiry. *See id.* at 193 (excessive force inquiry looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended).

For his part, McDonald relies on *Black v. Stephens*, 662 F.2d 181 (3d Cir.1981), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). The defendant in *Black*, an undercover detective driving an unmarked patrol car, pulled over his vehicle following a minor traffic altercation with the plaintiffs, a husband and wife, approached their car and threatened to shoot the husband. The court held that "[f]or an unidentified officer to brandish his revolver eighteen inches from [the husband's] head with [the wife] in the precise line of fire and then threaten to shoot, is conduct that shocks the conscience." *Id.* at 189.

We agree with McDonald that *Black* clearly establishes that the force described in the complaint, if true, was constitutionally proscribed. Although the officer in *Black* was acting in an undercover capacity, this is not a sufficient distinction upon which to find Haskins' alleged actions permissible. It is "obviously and inescapably implicit" in *Black* that it would be objectively unreasonable for Haskins, in the alleged absence of any danger, to place his gun to the head of a young child and threaten to shoot. *See K.H. ex rel. Murphy*, 914 F.2d at 851. That *Black* is a Third Circuit case is of no moment; no case has since held to the contrary, and Haskins would have no reason to think that *this* Circuit would reject its holding. *See id.* at 852. Moreover, the court in *Black* found that the officer's behavior met the "shocks the conscience" standard which, as we have previously observed, constitutes an even higher burden for plaintiffs than the objective reasonableness test. *See Titran*, 893 F.2d at 147; *Lester v. City of Chicago*, 830 F.2d 706, 714 (7th Cir.1987).

Our conclusion is buttressed by *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), which enunciated a "totality of the circumstances" approach for analyzing seizures under the Fourth Amendment. *Garner* held that an officer's use of deadly force to apprehend a suspect

is unreasonable, absent probable cause that the suspect is dangerous or has committed a violent crime. *Id.* at 11, 105 S.Ct. at 1701. Further, *Garner* stated that determining whether a police officer has unreasonably seized a person by using excessive force involves balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 8, 105 S.Ct. at 1699. The balancing of interests depends on "whether the totality of circumstances justifies a particular sort of … seizure." *Id.* at 8–9, 105 S.Ct. at 1699–1700.

That Haskins' behavior, as alleged in the complaint, violated the excessive force standard was "inescapably implicit" in *Garner.* It should have been obvious to Haskins that his threat of deadly force—holding a gun to the head of a 9–year–old and threatening to pull the trigger—was objectively unreasonable given the alleged absence of any danger to Haskins or other officers at the scene and the fact that the victim, a child, was neither a suspect nor attempting to evade the officers or posing any other threat. As we observed in *Lester,* 830 F.2d at 711, "Although the issue in *Garner* was deadly force, implicit in its totality of circumstances approach is that police use of less than deadly force would violate the Fourth Amendment if not justified under the circumstances."

In sum, that no precisely analogous case exists does not defeat McDonald's claim. It would create perverse incentives indeed if a qualified immunity defense could succeed against those types of claims that have not previously arisen because the behavior alleged is so egregious that no like case is on the books. As we recognized in *K.H. ex rel. Murphy,* 914 F.2d at 851, "The easiest cases don't even arise. There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune … because no previous case had found liability in those circumstances."

This decision comes at an early stage in the proceedings. We are limited to looking at the plaintiff's pleadings taken as true, without the additional fact development of a summary judgment procedure. Given this, we agree with the district court that, without the benefit of affidavit or other evidentiary materials, the complaint cannot be dismissed on qualified immunity grounds. Although McDonald's somewhat skeletal allegations of wrongdoing skirt close to providing insufficient facts upon which to base a determination, we find that he sufficiently pleads the violation of a clearly established constitutional right to survive the defendant's motion to dismiss based on the defense of qualified immunity.

AFFIRMED.